# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION
### CASE NO.

JAMES R. HEDGES IV,
Individually, and KACTUS LLC,
a foreign limited liability company,

      Plaintiffs,

v.

ARTISTIC ENDEAVORS, LLC, a
foreign limited liability company,
TYLER T. TYSDAL, Individually,
PLATTE MANAGEMENT, LLC, a
foreign limited liability company,
MONTAGE FINANCE, LLC, a foreign
limited liability company, and
IMPACT OPPORTUNITIES FUND, L.P.,
a foreign limited partnership,

      Defendants.

_____/

## COMPLAINT

Plaintiffs, JAMES R. HEDGES IV, individually, and KACTUS LLC, a foreign limited

liability company, sue Defendants, ARTISTIC ENDEAVORS, LLC, a foreign limited liability

company, TYLER T. TYSDAL, individually, PLATTE MANAGEMENT, LLC, a foreign

limited liability company, and MONTAGE FINANCE, LLC, and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff James R. Hedges IV ("Hedges"), a resident of New York and Florida[1]

and an art collector and has specialized knowledge of investing in Andy Warhol photographs and

other contemporary art. Hedges is a member of Plaintiff Kactus, LLC.

_____

[1] Hedges lives in Naples, Florida in a home that he stands to inherit from his parents and spends
considerable time there. His ex-wife received custody of his two children and maintains her

2.      Plaintiff Kactus, LLC ("Kactus") is a New York limited liability company, doing business in New York City and Naples, Florida.  Kactus is a non-voting member of Defendant Artistic Endeavors, LLC.

3.      Defendant Tyler T. Tysdal ("Tysdal") is a resident of Denver, Colorado.  This Court has personal jurisdiction over Tysdal because he was the de facto employer of Hedges in Naples, Florida and Miami, Florida, among other places.

4.      Defendant Artistic Endeavors, LLC ("Artistic Endeavors") is a Colorado limited liability company, doing business in New York and Florida. This Court has personal jurisdiction over Artistic Endeavors because it was the de facto employer of Hedges in Naples, Florida and Miami, Florida, among other places.

5.      Defendant Platte Management, LLC ("Platte") is a Colorado limited liability company.  Platte is the managing member of Artistic Endeavors, and Tysdal is the managing member of Platte. This Court has personal jurisdiction over Platte because it was the de facto employer of Hedges in Naples, Florida and Miami, Florida, among other places.

6.      Defendant Montage Finance, LLC is a Colorado limited liability company and is successor-in-interest to Montage Finance, LP, a Delaware limited partnership. This Court has personal jurisdiction over Montage Finance, LLC because it was the de facto employer of Hedges in Naples, Florida and Miami, Florida, among other places.

7.      Defendant Impact Opportunities Fund, L.P. ("IOF"), upon information and belief, is a Colorado limited partnership.  This Court has personal jurisdiction over IOF because it entered into a contract with Hedges and Kactus which was to be and was in fact performed in Florida, among other places.

home in Naples. One child is still a minor and when not in boarding school resides in Naples. Accordingly, Hedges is drawn to Naples, Florida due to strong family ties.

8.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

9.     Moreover, this Court also has diversity subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1332 as complete diversity exists among the parties and the amount in controversy is over $75,000.00.

10.    In the alternative, this Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 as the state and federal claims arise from a common nucleus of operative facts that are so related that they form part of the same case or controversy under Article III of the United States Constitution.

## FACTUAL BACKGROUND

11.    In 2010, Plaintiff Hedges and Defendant Tysdal decided to venture together in the field of art investment. Hedges was to be the active person in a venture primarily collecting and transacting in Andy Warhol photographs and other contemporary art.

12.    More specifically, in 2010, Hedges and Tysdal co-founded Montage Finance, LP ("Montage"), a Delaware limited partnership.

13.    Montage is an investment company that provides loans to collectors, galleries, consultants, and other art industry participants secured by fine art, collectibles and antiques.

14.    As part of Hedges' compensation package, Montage agreed to purchase several outstanding promissory notes on which Kactus was the debtor and on which Hedges was personal guarantor.  Hedges and Tysdal agreed that Montage would simply hold these notes and would not attempt to collect against Kactus or Hedges and over time cancel the notes so as to minimize any potential income tax impact on Kactus and Hedges.

15.     In 2011, Hedges and Tysdal (through, respectively, Kactus and Platte) formed Artistic Endeavors as a company that would purchase and sell art and other alternative assets of an artistic or similar nature.  Although the ownership percentages later changed, at the formation of Artistic Endeavors, Platte owned 50% of Artistic Endeavors and was the managing member and a voting member; Kactus owned 50% of Artistic Endeavors and was a non-voting member.

16.     Hedges and Tysdal agreed that Hedges would perform all of the work necessary or appropriate to acquire, market, and sell the artwork and receive compensation for such services.  The compensation was contemplated to consist of the payments of commissions on the sales of artwork and reimbursement of expenses relating to Hedges devoting a substantial amount of time to acquiring, marketing, and selling high-end artwork, primarily consisting of Andy Warhol photographs for Artistic Endeavors.

17.     Hedges rendered such services in the State of Florida and elsewhere, most recently exhibiting and marketing artwork at Art Basel, Miami, one of the pre-eminent art festivals in the world.  This festival required extensive preparation and planning and required Hedges to be in and maintain his connection with Florida for an extended period.

18.     Further, Tysdal and Hedges agreed the latter would retain control of the artworks and that all payments due to Hedges would come from the sales of the artwork. Hedges understood that meant he could retain the artwork to ensure he would be paid his compensation.

19.     In discharging his duties to Tysdal in 2011, Hedges noticed that the Andy Warhol Foundation for the Visual Arts was selling certain photographs by Mr. Warhol. Mr. Hedges concluded that not only would such photographs appreciate considerably over time and be suitable for investment and private collection, but also that the photographs could be initially acquired for a substantially discounted price.

20.     Between August 2011 and March 2012, Mr. Hedges, acting for Artistic Endeavors, purchased hundreds of photographs and other materials from the Warhol Foundation and other artwork from other parties, all for investment. Those purchases were financed by Montage and IOF, both of which are substantially controlled by Tysdal, as well as private clients of Cherry Creek Family Offices, another entity which Tysdal substantially controls and has a substantial equity interest.

21.     In March 2013, due to the artwork not selling as quickly as the parties anticipated, the parties agreed that Hedges' compensation would be structured differently going forward than it had been previously.

22.     Specifically, the parties agreed that Hedges would partially be compensated for his efforts as follows:

> Montage will pay to Mr. Hedges approximately $10,000 per month for services rendered for, and on behalf of, Montage. This arrangement will be governed by a Management Services Agreement, which agreement will be terminable by either Montage or Mr. Hedges, without cause, upon 10 days' written notice.

*See* Letter of Intent, dated March 20, 2013, attached as **Exhibit "A"**.

23.     While it is unknown at this time (pending discovery) whether any written Management Services Agreement was ever entered into, Hedges relied upon the agreement and began receiving his agreed-upon $10,000 per month. *See* Email from Tyler Tysdal to Jim Hedges, dated April 24, 2013 and June 20, 2013 Email from Mike DeJager to Tyler Tysdal and others, attached as **Composite Exhibit "B"**.

24.     Additionally, at the same time, the parties agreed that Artistic Endeavors' entire debt obligation to IOF would be converted to equity. After such conversion, the ownership percentages of Artistic Endeavors were 40% Platte Management, 40% Kactus, and 20% IOF. *See* October 1, 2013 Email from Mike DeJager to Jim Hedges and Tyler Tysdal, and attached

spreadsheet, attached as **Composite Exhibit "C"** (showing IOF as owning 20% of Artistic Endeavors).

25.     Although it is unknown whether Tysdal ever observed the formalities with this conversion, subsequent communications regarding the equity structure and finances of Artistic Endeavors reflect that all parties agreed that the conversion had occurred. *See id., see also* Email from Jason Gaede to Jim Hedges, dated November 12, 2013, attached as **Exhibit "D"** (stating that Artistic Endeavors had not been paying interest on its loan from IOF, thereby providing additional evidence that IOF's debt had been converted to equity).

26.     Nevertheless, Hedges adhered in good faith to his agreement with Montage, and used his best efforts to market and sell the Andy Warhol artwork.

27.     On or about October 30, 2013, after disappointing sales results and dissatisfaction with Artistic Endeavors' incentive structure, governance, and lack of operating capital, Hedges notified Defendants that he had made the decision to move forward with other professional opportunities, while continuing to enthusiastically market and attempt to sell the artwork for the highest prices possible.

28.     However, Hedges also assured Defendants that he was committed to maximizing the return from the artwork, and that he would work with Defendants to achieve a mutually beneficial transition and completion of his tasks as the person best suited to market and sell the art work acquired through his endeavors.

29.     Also, Hedges communicated to Defendants that one of Hedges' clients was interested in acquiring the debt of Artistic Endeavors, and requested that Defendants provide him with details regarding Artistic Endeavors' existing debt obligations.

30.     To Hedges' surprise, Defendants responded with a spreadsheet showing that IOF's debt had, in fact, *not* been converted to equity, and therefore that the debt obligations of Artistic Endeavors were over $1.15 million more than what Hedges expected.

31.     This additional debt obligation made Artistic Endeavors an unattractive target to potential debt purchasers, as it increased the debt-to-value ratio to an unacceptable degree.

32.     When Hedges responded with surprise, Defendants disingenuously claimed that the equity conversion had been discussed but never completed, contrary to the actions and communications of the previous six months.

33.     Further, when Hedges attempted to submit an expense report showing that his agreed-upon $10,000 monthly distributions for August, September, October, and November 2013 (totaling $40,000), along with additional reimbursable business expenses which Hedges had personally covered (totaling $28,974), had been set-off against his receipt of $51,500 in sales proceeds from sales of the artwork (leaving a net shortfall due to Hedges of $17,474), Defendants disingenuously claimed that Hedges had "stolen" the $51,500, that he was not entitled to any distributions, demanded return of all of the artwork so that it could be liquidated, and directed their lawyer to send threatening letters to Hedges making the foregoing baseless accusations.

34.     Defendants also decided, unilaterally and without any prior notice, to declare that Kactus' and Hedges' obligations under the promissory notes (assumed by Montage in 2011 as part of Hedges' executive compensation package) were in default.

35.     Just prior to Hedges attending Art Basel in Miami Beach, Florida, Defendants engaged in a phony termination of Hedges, telling him he was not allowed to engage in further exhibition or marketing of the Warhol artwork.

36.    In an effort to mitigate the damages caused by Defendants' bad faith conduct, Hedges has continued to engage in marketing efforts with respect to the Warhol artwork, and has incurred further expenses thereby.

## COUNT I
## WAGE AND HOUR FEDERAL STATUTORY VIOLATION; FAILURE TO PAY MINIMUM WAGE AGAINST ALL DEFENDANTS
### *(By Hedges against all Defendants)*

37.    Plaintiff Hedges re-adopts each and every factual allegation as stated in paragraphs 1-36 of this Complaint as if set forth herein.

38.    This action is brought by Plaintiff Hedges to recover from all Defendants unpaid minimum wage compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorneys' fees under the provisions of 29 U.S.C. 201 et seq., and specifically under the provisions of 29 U.S.C. 206.

39.    At all relevant times, the Joint Employer, Montage, is and was an enterprise engaged in interstate commerce, including, among other activities, the national and international buying, selling, and financing of artwork.

40.    At all relevant times, the Joint Employer, Artistic Endeavors, is and was an enterprise engaged in interstate commerce, including, among other activities, the national and international buying, selling, and financing of artwork.  (Joint Employers Montage and Artistic Endeavors are referred to collectively as the "Joint Employer Defendants").

41.    The Joint Employers Defendants' business activities involve those to which the Fair Labor Standards Act applies.  Plaintiff Hedges' work for the Joint Employers Defendants likewise affected interstate commerce.

42.    In the course of his employment with the Joint Employers Defendants, and specifically in August, September, October, and November 2013, Plaintiff Hedges was not paid

minimum wages for any hour that he worked, based upon the Joint Employers Defendants' actions in, among other things, suing Plaintiff Hedges to recover the rightful wages paid Hedges for such periods.

43.     Plaintiff Hedges was not paid minimum wages for the hours and relevant time periods specified above.   Therefore, Joint Employers Defendants unlawfully failed to pay minimum wages to Plaintiff.    Plaintiff seeks to recover for minimum wage violations accumulated from August 2013 to November 2013.

44.     Joint Employers Defendants knew and/or showed reckless disregard of the provisions of the Act concerning the payment of minimum wages as required by the Fair Labor Standards Act and remains owing Plaintiff Hedges for the period set forth above, and Plaintiff Hedges is entitled to recover double damages.

45.     At the times mentioned, individual Defendant Tysdal controlled the Joint Employers Defendants.   Defendant Tysdal was an employer of Plaintiff Hedges within the meaning of Section 3(d) of the "Fair Labor Standards Act" [29 U.S.C. § 203(d)], in that he acted directly in the interests of Defendant employer in relation to the employees of Defendant employer, including Plaintiff.  Defendant Tysdal had operational control of the business, and is jointly liable for Plaintiff's damages.

46.     At the times mentioned, individual Defendant Platte controlled Joint Employers Defendants.  Defendant Platte was an employer of Plaintiff Hedges within the meaning of Section 3(d) of the "Fair Labor Standards Act" [29 U.S.C. § 203(d)], in that he acted directly in the interests of Defendant employer in relation to the employees of Defendant employer, including Plaintiff.  Defendant Platte had operational control of the business, and is jointly liable for Plaintiff's damages.

47.     Defendants Montage, Artistic Endeavors, Tysdal, and Platte willfully and intentionally refused to pay Plaintiff Hedges minimum wages as required by the law of the United States as set forth above and remains owing Plaintiff these minimum wages as set forth above.

48.     Plaintiff Hedges has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

WHEREFORE, Plaintiff James R. Hedges, IV respectfully request that this Honorable Court:

A.  Enter judgment for Plaintiff Hedges against Defendants Montage Finance, LLC, Artistic Endeavors, LLC, Platte Management, LLC, and Tyler Tysdal on the basis of Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.  Award Plaintiff Hedges actual damages in the amount shown to be due for unpaid minimum wages with interest; and

C.  Award Plaintiff Hedges reasonable attorneys' fees and costs of suit; and

D.  Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

## COUNT II
## BREACH OF CONTRACT
### *(by Hedges against Montage, Artistic Endeavors, and IOF)*

49.     Plaintiff Hedges re-adopts each and every factual allegation as stated in paragraphs 1-36 of this Complaint as if set forth herein.

50.     As set forth above, Hedges, Montage, Artistic Endeavors and IOF entered into a contract, certain of the substantial terms of which are contained in the Letter of Intent attached

hereto as Exhibit "A", whereby Hedges performed the above-referenced obligations and Montage was to, among other things, pay Hedges $10,000 per month, and reimburse Hedges for his reasonably-incurred expenses.

51.     Montage and Artistic Endeavors breached such contract by refusing to pay Hedges the $40,000 to which he was entitled for the months of August, September, October, and November 2013.

52.     Montage and Artistic Endeavors further breached such contract by refusing to reimburse Hedges for over $25,000 in reasonably-incurred expense monies incurred by Hedges.

53.     Further, under the contract, Montage, Artistic Endeavors, and IOF were to convert Artistic Endeavors' debt obligation to IOF into equity.

54.     Montage, Artistic Endeavors, and IOF breached such contract by claiming that such debt obligation had not, in fact, been converted.

55.     As a result, Hedges has sustained damages.

WHEREFORE, Plaintiff James R. Hedges, IV respectfully requests that this Honorable Court:

A. Enter judgment for Plaintiff Hedges against Defendant Montage Finance, LLC, Defendant Artistic Endeavors, LLC, and Defendant Impact Opportunities Fund, LP; and

B. Award Plaintiff Hedges actual damages, plus prejudgment interest at the maximum rate allowable by law; and

C. Award Plaintiff Hedges reasonable attorneys' fees and costs of suit; and

D. Order injunctive relief in the form of an order that, as of March 2013, all debt obligations owed by Artistic Endeavors, LLC to Impact Opportunities Fund, LP, were converted into a 20% equity stake; and

E. Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Florida Law.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (by Kactus against Platte)

56.    Plaintiff Kactus re-adopts each and every factual allegation as stated in paragraphs 1-36 of this Complaint as if set forth herein.

57.    As managing member and the sole voting member of Artistic Endeavors, LLC, Platte owed fiduciary duties to Kactus, the non-voting member.

58.    Platte breached such duties by its actions as described above; more particularly, Platte breached such duties by:

A. Disingenuously and falsely claiming that Hedges had "stolen" the $51,500, that he was not entitled to any distributions, demanded return of all of the artwork so that it could be liquidated, and directed its lawyer to send threatening letters to Hedges making the foregoing baseless accusations;

B. Deciding, unilaterally and without any prior notice, to declare that Kactus' and Hedges' obligations under the promissory notes (assumed by Montage in 2011 as part of Hedges' executive compensation package) were in default; and

C. Taking a course of action which appears to include liquidating the artwork for a fraction of its value in order to pay the debt obligations owed by Artistic Endeavors to various entities owned or controlled by Tysdal.

59.     As a result, Kactus has sustained damages.

WHEREFORE, Plaintiff Kactus, LLC respectfully requests that this Honorable Court:

A.  Enter judgment for Plaintiff Kactus against Defendant Platte Management, LLC; and

B.  Award Plaintiff Kactus compensatory damages, plus prejudgment interest at the maximum rate allowable by law; and

C.  Order injunctive relief in the form of an order directing that the artwork owned by Artistic Endeavors be sold in a commercially-reasonable manner, and not in a liquidation or "fire sale"; and

D.  Award Plaintiff Kactus reasonable attorneys' fees and costs of suit; and

E.  Grant such other and further relief as this Court deems equitable and just.

Dated: December 24, 2013                    Respectfully submitted,

                                            **ALAYON & ASSOCIATES, P.A.**
                                            135 San Lorenzo Avenue, Suite 820
                                            Coral Gables, Florida 33146
                                            Phone: (305) 221-2110
                                            pleadings@alayonlaw.com
                                            *Counsel for Plaintiffs*

By:     _____
                                            RICHARD A. ALAYON, ESQ.
                                            ralayon@alayonlaw.com
                                            Fla. Bar No. 934290