**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF FLORIDA
FORT MYERS DIVISION**

JAMES R. HEDGES, IV and
KACTUS LLC,

       Plaintiffs,

v.                                       Case No: 2:13-CV-890-FtM-29UAM

ARTISTIC ENDEAVORS, LLC;
TYLER T. TYSDAL; PLATTE
MANAGEMENT, LLC; MONTAGE
FINANCE, LLC; and IMPACT
OPPORTUNITIES FUND, L.P.,

       Defendants.

_____

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(3), and 12(b)(6)**

COME NOW, Defendants ARTISTIC ENDEAVORS, LLC; TYLER T. TYSDAL; PLATTE MANAGEMENT, LLC; MONTAGE FINANCE, LLC; and IMPACT OPPORTUNITIES FUND, L.P., by and through their undersigned counsel, and file this Motion to Dismiss the claims against them pursuant to Fed. R. Civ. P. rules 12(b)(2) for lack of personal jurisdiction over them, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim upon which relief can be granted, and state:

**INTRODUCTION**

This case concerns a dispute about the operations of and artwork owned by Artistic Endeavors, LLC, a Colorado limited liability company. Mr. Hedges, a New York resident and 50% beneficial owner of Artistic Endeavors through his wholly-owned investment company, co-Plaintiff Kactus, LLC, has refused to return artwork owned by Artistic Endeavors, and has failed to turn over sales proceeds in his possession from the sale of certain artwork as well. Prior to the

initiation of this case, Artistic Endeavors had already filed suit in New York, where Mr. Hedges lives, to recover the artwork and sales proceeds from him.  *See* Petition filed in the Supreme Court of New York, New York County, attached as Exhibit 1.[1]  In response, Mr. Hedges came here to the Middle District of Florida, a jurisdiction where no party lives, no party does business, and no party has any substantial connection, and filed this case alleging one federal law claim for violation of the Fair Labor Standards Act ("FLSA") and two supplemental state law claims for breach of contract and breach of fiduciary duty.

This is a completely improper venue and jurisdiction for this dispute.  First, venue is improper because none of the Defendants can be found in this District, and this District is not the situs of any of the events or omissions giving rise to the claims.  Mr. Hedges' only connection is to allege that he stands to inherit his parents' home in Naples, Florida, and his children live part-time with his ex-wife here in Florida, when they are not living with him in New York.  He has obviously chosen an inconvenient and improper forum in order to evade answering the claims in his home jurisdiction of New York concerning the very same artwork and payments at issue here.

Second, there is no personal jurisdiction over the Defendants.  None of them are residents of Florida, none of them have offices or conduct business in Florida sufficient to satisfy the Florida Long-Arm Statute.  There are not minimum contacts with any Defendant and the State of Florida, and even if there was, exercise of jurisdiction over them here would unquestionably offend traditional notions of fair play and substantial justice.

---

[1]  A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment, including public records and pleadings filed in another court of law.  *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006)(*citing Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) *and Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)).

Additionally, even assuming venue and jurisdiction are proper (which they are not), Hedges fails to state any valid claim for relief.  His FLSA claim is precluded because he is a 50% beneficial owner of Artistic Endeavors, and therefore is not entitled to any minimum wage payments for his "sweat equity" work on behalf of the company.  His breach of contract claim fails to state a claim, because it is entirely based upon a Letter of Intent that is not a valid contract, was never signed by the parties, was not performed by the parties, and expressly states in its second paragraph that it is non-binding.

In sum, Plaintiff has run to Florida and filed this action in an improper venue against Defendants over whom he knew the Court had no jurisdiction, as a reactive strike and response to having been sued in New York by Artistic Endeavors.  His claims lack any factual or legal foundation, and should be dismissed in order that Mr. Hedges be precluded from his obvious "forum shopping."

## LEGAL ARGUMENT

**I.      There is no personal jurisdiction over the Defendants in Florida.**

Plaintiff, a resident of the State of New York, has come to this Court to file his complaint against Defendants.  Yet, none of the Defendants resides in Florida or in this District, none does business in Florida, and none are subject to jurisdiction in FloridaThe actions forming the basis of the Complaint did not occur in Florida or this District.  Even Plaintiff is not a true resident of the State of Florida, owning no property here and having no proper connection to the forum.  As a result, the Complaint should be dismissed because there is no personal jurisdiction over the Defendants here, and this is not the correct venue for this dispute.

### A.     There is no personal jurisdiction over the Defendants.

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009).  A prima facie case of personal jurisdiction exists if the plaintiff alleges sufficient facts to withstand a motion for directed verdict or judgment as a matter of law.  *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 810 (11th Cir. 2010); *SEC v. Carrillo,* 115 F.3d 1540, 1542 (11th Cir. 1997). If defendant challenges jurisdiction by submitting affidavit evidence making a specific factual denial based on personal knowledge, the burden shifts to the plaintiff to produce competent evidence supporting jurisdiction.  *Mazer,* 556 F.3d at 1274.  The plaintiff bears the ultimate burden of establishing that personal jurisdiction is present.  *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir. 2009).

The existence of personal jurisdiction is a question of law. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010); *Oldfield,* 558 F.3d at 1217.  A court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir. 1996).  First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied.  *Id*.  If the requirements of the long-arm statute are satisfied, then the court must inquire as to (1) whether defendant has established sufficient "minimum contacts" with the State of Florida; and then (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice." *Id.* at 630-31 (quoting *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**B.     The allegations in the Complaint are insufficient to satisfy the Florida Long-Arm Statute.**

Under 11th Circuit precedent and Florida law, Florida's long-arm statute and assertions of jurisdiction under them must be strictly construed in favor of the non-resident defendant.  *Core Indus., Inc. v. Agostinelli,* 591 So.2d 207, 210 n. 4 (Fla. 4th DCA 1991); *Sculptchair*, 94 F.3d at 627.

Florida's long-arm statute provides in pertinent part that jurisdiction can be exercised over any person "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."   Fla. Stat. § 48.193(1)(a).  Jurisdiction may also be found upon a "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

"In order to establish that [defendant] was engaged in substantial and not isolated activity in Florida, the activities of [defendant] must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1361 (11th Cir. 2006) (quoting *Sculptchair*, 94 F.3d at 627).

Here, Plaintiff does not allege that Artistic Endeavors or any other Defendant conducts regular business in Florida, or that they own property or have offices in Florida.  Rather, the extent of Plaintiff's allegations concerning any connection whatsoever to the State of Florida is the allegation that (a) Hedges is a "resident of New York and Florida," *see* Complaint at ¶ 1, and that (b) this Court has personal jurisdiction over each defendant "because [each defendant] was the de facto employer of Hedges in Naples, Florida and Miami, Florida, among other places," *see*

Complaint at ¶¶ 3, 4, 5, 6, or Defendant IOF purportedly entered into a contract "which was to be and was in fact performed in Florida, among other places," *id.* at ¶ 7.

These conclusory, "magic word" types of statements by Plaintiffs have no underlying factual basis, and are insufficient to properly allege general personal jurisdiction over Defendants.  There are no specific factual allegations that any defendant does business in Florida, has offices in Florida, owns property in Florida, pays taxes in Florida, or sells to the public in Florida.  Indeed, as shown by the Declaration of Tyler Tysdal, attached hereto as Exhibit 2, neither he nor any of the other defendants have such "substantial and not isolated activity in Florida" to give rise to personal jurisdiction here under the Florida long-arm statute.

Nor is it sufficient for Plaintiffs to attempt to bootstrap jurisdiction over Tysdal, Montage, Platte, and IOF through the allegations that they are "de facto employers" of Hedges by virtue of alleged control of Artistic Endeavors.  Such allegations fail to recognize that, as a matter of law, conduct of non-resident corporate officers and shareholders, taken in their corporate (as opposed to individual capacity), does not subject them to personal jurisdiction. *Bloom v. A.H. Pond, Inc.,* 519 F.Supp. 1162, 1170-71 (S.D.Fla. 1981).  In order for a non-resident corporate officer or "de facto employer" under the FLSA to be subject to personal jurisdiction in Florida, a plaintiff must establish that the officer acted not only in his capacity as agent for the corporation, but that he acted individually, for his own benefit, and thereby caused harm in the forum state. *Doe v. Thompson,* 620 So.2d 1004, 1006 (Fla. 1993).  There are no such allegations here.

C.   **There are not sufficient minimum contacts between the Defendants and the State of Florida, and haling them into Court here would offend traditional notions of fair play and substantial justice.**

Even if Plaintiffs could satisfy the Florida long-arm statute (which they did not), they cannot show that there are sufficient minimum contacts to hale Defendants into Court in Florida, and because haling Defendants into Court here (even if there are minimum contacts) would offend traditional notions of fair play and substantial justice.

The first prong of the due process analysis considers whether each defendant engaged in minimum contacts with the State of Florida.  *Madara v. Hall,* 916 F.2d 1510, 1515–16 (11th Cir.1990) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).   If there are sufficient minimum contacts, the second prong considers whether the exercise of personal jurisdiction over that defendant would nonetheless offend traditional notions of fair play and substantial justice.  *Id.*

1.   **There are no minimum contacts between any Defendant and the State of Florida.**

To establish minimum contacts, there must be a "purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1363 (11th Cir.2006) (quotations and citations omitted).  As long as there is a "substantial connection," even a single act can be sufficient to support jurisdiction depending on the nature and quality of the contact.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  Physical presence of the defendant in the forum state is not required, *id.* at 476, but defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there,"  *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citations omitted).

First, there is no general personal jurisdiction.  General jurisdiction requires continuous and systematic contact with the State.  *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).  General jurisdiction is exercised "over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Id.* at 415 n. 9.  Plaintiffs here do not allege any facts which would establish general jurisdiction.  As shown by Mr. Tysdal's Declaration, none of the Defendants have offices in Florida, conduct business in Florida, pay taxes in Florida, are registered to do business in Florida, or have bank accounts or property in Florida.  *See* Declaration, Exhibit 2, at ¶¶ 8-10.  As such, there are simply no contacts upon which jurisdiction can be based.

Similarly, there is no specific jurisdiction either.  "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *McGow v. McCurry,* 412 F.3d 1207, 1214 n. 3 (11th Cir. 2005).  Here, there are no allegations of affirmative action by any Defendant in Florida, or any facts alleged which might indicate that any Defendant availed themselves of the protection of Florida law.  Significantly, as stated in Mr. Tysdal's Declaration, all connections with Plaintiffs were at Plaintiffs' location in New York, not in Florida.  While Plaintiffs purport to state that they were owed performance of a contract in Florida, there is no actual document stating as such (only an unsigned non-binding term sheet), and there is no allegation or evidence of any connection between any Defendant and Florida.  "[T]here must exist a duty to perform an act in Florida; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1218 (11th Cir. 1999).

**2. Haling the Defendants into court in Florida would offend traditional notions of fair play and substantial justice.**

Assuming for the sake of argument that minimum contacts exist, haling Mr. Tysdal and the other Defendants into this Court would offend traditional notions of fair play and substantial justice.

When determining whether the assertion of personal jurisdiction would comport with notions of "fair play and substantial justice," a court considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.* 471 U.S. at 477–78 (quoting *World–Wide Volkswagen Corp.,* 444 U.S. at 292) (internal quotations omitted).

Here, these factors weigh in favor of dismissal. First, the burden on the defendants would be significant, requiring retention of additional counsel in Florida (notwithstanding that they already have counsel in New York, prosecuting the pending replevin action against Mr. Hedges to recover the artwork rightfully owned by Artistic Endeavors). Mr. Tysdal could be forced to travel for depositions, and participate in other discovery outside of his residence in Colorado. There is also the burden of the piecemeal litigation caused by Mr. Hedges' having filed this action, notwithstanding that he already is a defendant to litigation against him in New York concerning the same set of facts and circumstances.

Second, Florida has little interest in adjudicating this dispute. Mr. Hedges admits in his Complaint that he is a resident of New York (while also claiming to be "drawn to Naples, Florida" because he stands to inherit his parents' home here at some unknown time, and because his ex-wife lives here and has custody of one minor son who is in Naples "*when not in boarding*

9

*school*").  *See* Complaint at n. 1.  Mr. Hedges does not live here, is not a bona fide resident of Florida, and none of the Defendants are located here either.  This Court was clearly chosen by Mr. Hedges for this action based upon its *extreme inconvenience* to Defendants, rather than because it is any sort of proper venue.

The third factor, Plaintiffs' interest in obtaining convenient and effective relief, weighs in favor of Defendants.  Hedges is a New York resident, and there is already a case pending there. Mr. Hedges' "kitchen sink" approach, asserting all possible claims against all possible parties, also ignores a valid arbitration provision as to Artistic Endeavors for his breach of fiduciary duty claim.

Concerning the fourth and fifth elements, as to the interest of the judicial system and the several States, these factors weigh in favor of Defendants as well.  Artistic Endeavors already has litigation pending in New York concerning recovery of the artwork that Mr. Hedges currently holds, which he claims (in his words) is to "ensure he would be paid his compensation."  *See* Complaint at ¶ 18.  By definition, then, his demand here that he be entitled to retain the artwork and be paid his purported compensation is a compulsory counterclaim in the New York action, and should not be brought here.  Mr. Hedges is creating significant burdens on the judicial system of this Court and of multiple states by coming to this inconvenient forum, and asserting claims that are necessary counterclaims he must assert in New York or other venues.

## II.      The Middle District of Florida is not a valid or proper venue for this action.

For multiple reasons, this venue is improper and the claims should be dismissed, and Mr. Hedges and his company Kactus should be required to re-file their claims in a proper venue.

Where an action is not based on diversity, venue is proper only in: 1) a district in which any defendant resides, if all defendants reside in the same state, 2) a district in which a

"substantial part of the events or omissions giving rise to the claim occurred" or a substantial part of the property that is subject to the action is situated; or 3) a district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

On a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of showing that venue in its chosen forum is proper. *Gulf Power Co. v. Coalsales II, LLC,* No. 3:06–cv–270–MCR, 2008 WL 563484, at *5 (N.D.Fla.Feb.27, 2008) (citing *Wai v. Rainbow Holdings,* 315 F.Supp.2d 1261, 1268 (S.D.Fla.2004)); *Brown v. Brown,* No. 8:06–CV–1028–T–24TGW, 2007 WL 949424, at * 2 (M.D.Fla. Mar. 27, 2007). In considering such a motion, a court accepts the facts in the plaintiff's complaint as true. *Wai,* 315 F.Supp.2d at 1268. A court may "consider matters outside the pleadings if presented in proper form by the parties." *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.,* 146 F.Supp.2d 1344, 1349 (S.D.Fla.2001) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (2d ed.1990)).

If venue is improper, the district court "**shall dismiss**, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added).

### A. Venue is improper because none of the Defendants are in Florida, and none of the events or claims are situated in Florida.

As established above, none of the Defendants resides or can even be found in Florida. They all are in Colorado. *See* Tysdal Declaration at ¶¶ 3-6. The only possible basis for venue in the Middle District of Florida would be 28 U.S.C. § 1391(b)(2), if a "substantial part of the events or omissions giving rise to the claim occurred" or "a substantial part of the property that is subject to the action is situated." That is not the case here.

11

As established by Mr. Tysdal's Declaration, Mr. Hedges was never paid in Florida, and was not expected to perform work in this district on behalf of Artistic Endeavors.  All of the artwork at issue in this case (currently held by Mr. Hedges) is located in New York, which was and is the situs of Mr. Hedges' office.  Even an annual trip to the art show Art Basel does not establish venue here, as Art Basel occurs in Miami, Florida, which is not in this federal district (but rather in the Southern District of Florida).  Notably, Mr. Hedges makes no *actual* allegations of any work he performed within this district, and *no* allegations of any instruction or expectation by Artistic Endeavors or any other defendant that he perform any work in the Naples area at all.  Defendants were unaware that Hedges could or would perform any work in Naples.  *See* Tysdal Declaration at ¶ 16.

Moreover, Mr. Hedges' public interviews and other public information contradict his allegations.  For example, in an interview with Introspective Magazine in September 2013 (the exact timeframe of his allegations here), Mr. Hedges openly admits that he does not work in Florida, does not live in Florida, and that his sons do not live in Florida.  Rather, Mr. Hedges fully states that he lives and works in New York, and that his sons live with him *in New York*.  *See* Introspective article, attached hereto as exhibit 3, at p. 9.  Hedges runs his office out of his New York home.  *See id.* at 12.  These statements directly contradict his own allegations in footnote one of his Complaint here, where he professes to have "strong family ties" to the Naples area.  His claim under the FLSA simply does not properly lie in this District, and therefore should be dismissed.

### B. The third claim, by Kactus for breach of fiduciary duty, is subject to an arbitration clause requiring arbitration in Denver, Colorado.

Plaintiff Kactus's third claim for breach of fiduciary duty against Platte, to the extent it is viable at all, suffers from a fatal venue defect as well.  In this claim, Kactus alleges that Platte (as

the managing member of Artistic Endeavors) owes fiduciary duties to Kactus, and is breaching those duties by seeking to recover possession of the artwork and certain funds from Hedges.  *See* Complaint at ¶¶ 56-59.  Such claims necessarily fall within the scope of the arbitration clause in the Operating Agreement of Artistic Endeavors, to which Kactus and Platte are both parties.

Arbitration provisions are "a species" of forum selection clauses. *Stolt–Nielsen S.A., et al. v. AnimalFeeds Intel Corp.,* 559 U.S. 662, 698, 130 S.Ct. 1758, 1783, 176 L.Ed.2d 605 (2010); *See Maxwell v. N.l. (Bahamas), Ltd.* No. 11–12257, 2011 WL 4928737, at *1 n. 1 (11th Cir. Oct.18, 2011) ("[A]rbitration agreements are a type of forum selection clause ...."); *Cunningham v. Fleetwood Homes of Ga.,* 253 F.3d 611, 617 (11th Cir.2001) ("Agreements to arbitrate are essentially forum-selection clauses ...."). Accordingly, in the Eleventh Circuit, a motion pursuant to Rule 12(b)(3) is the proper vehicle to request dismissal of a complaint on the basis of a forum selection clause. *Slater v. Energy Servs. Group Intel, Inc.,* 634 F.3d 1326, 1333 (11th Cir. 2011).

In the Artistic Endeavors Operating Agreement, executed August 1, 2011, the two members of Artistic Endeavors (Kactus and Platte) expressly agreed that:

> Any claim, dispute, or controversy of whatever nature arising out of or relating to this Agreement (including any other agreement(s) contemplated hereunder), including, without limitation, any action or claim based on tort, contract, or statute . . . or concerning the interpretation, effect, termination, vfalidity, performance and/or breach of this Agreement ('Claim'), shall be resolved by final and binding arbitration before a single arbitrator ('Arbitrator') selected by the parties; *provided* that, if the parties can not agree to a single Arbitrator, each party shall select an arbitrator and such arbitrators shall select the Arbitrator.  The arbitration shall be held in Denver, Colorado, unless all parties agree otherwise.

Operating Agreement, attached as Exhibit 4, at § 14.6.  It is clear that, to the extent Kactus claims that Platte's duties as a manager of the LLC are being breached, such claims arise "out of

or relating to" the Operating Agreement for the company, and are therefore subject to exclusive arbitration in Denver, Colorado.[2]

Because none of the factors of Section 1391(b) have been satisfied, and there is an arbitration clause governing Kactus' Breach of Fiduciary Duty claim, this Court should dismiss the claims against Defendants entirely pursuant to Fed. R. Civ. P. 12(b)(3).

### III.  On their face, the FLSA and breach of contract claims asserted by Hedges fail to state a valid claim for relief.

Separate and apart from the fact that this action has been brought in an incorrect venue against Defendants over whom there is no personal jurisdiction, the claims themselves are fatally deficient and should be dismissed for failing to state a claim upon which relief can be granted.

#### A.  The FLSA Claim is invalid on its face, because Hedges qualifies for the executive exemption to the minimum wage and overtime requirements, if he even qualifies for FLSA protection at all.

Plaintiff Hedges asserts a claim under the FLSA, seeking payment of minimum wage compensation from all Defendants.  By his own factual allegations, however, he cannot be deemed an "employee," given that he is a 50% beneficial owner of Artistic Endeavors through his personal investment company Kactus.  Even if Mr. Hedges could be deemed an "employee," however, he still qualifies for the executive exemption to the minimum wage requirement, and therefore his claim still fails.

##### 1.  Mr. Hedges is not an "employee" for purposes of FLSA protection.

Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

---

[2] Mr. Hedges (who is not a direct member of Artistic Endeavors) cited to this very arbitration provision in his opposition to Artistic Endeavors' Motion for an Order to Show Cause in the New York proceeding, arguing that the case in New York should be dismissed due to this same arbitration provision.  That argument is currently pending before the New York court.

To determine an individual's employment status, the court "must evaluate the economic realities of the individual case" by focusing on whether the plaintiff was economically dependent on the employer.   *Antenor v. D & S Farms,* 88 F.3d 925, 932-33 (11th Cir. 1996).  In doing so, the court must look at the surrounding circumstances of the whole activity and not on isolated factors. *Goldberg v. Whittaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Aimable v. Long & Scott Farms,* 20 F.3d 434, 439 (11th Cir. 1994); *Santelices v. Cable Wiring,* 147 F.Supp.2d 1313, 1318 (S.D.Fla. 2001).

Individuals who participate in profits and losses, are exposed to liability, invest in the firm, hold partial ownership of firm assets, and are generally considered partners in the entity under agreement and law, are in "a different economic and legal category" and are not employees for purposes of the FLSA.  *Wheeler v. Hurdman*, 825 F.2d 257, 276 (10th Cir. 1987). "Characteristics pertinent to partnerships, such as the ability to share in profits, exposure to risk, and managerial control, 'introduce complexities and economic realities which are not consonant with employee status.'" *Escobar v. GCI Media, Inc.*, 08-21956-CIV, 2009 WL 1758712 (S.D. Fla. June 22, 2009)(*quoting Steelman v. Hirsch,* 473 F.3d 124, 129 (4th Cir.2007) and citing *Wheeler,* 825 F.2d at 275)).

> Plaintiffs, as putative co-owners of the business they were working to create, "assume[d] the risks of loss and liabilities" of the venture, and had a real opportunity to share in its profits upon success.  Plaintiffs' hours of "sweat-equity" represented their "capital" contribution to the business[.] . . . Taken together, the balance of these "economic realities" weighs against the existence of an employment relationship in this case. As Plaintiffs and Defendants were at all relevant times putative co-owners of the restaurant they were working to create, the Court finds that Plaintiffs were not, as a matter of economic reality, the employees of Defendants.

*Godoy v. Rest. Opportunity Ctr. of New York, Inc.*, 615 F. Supp. 2d 186, 195 (S.D.N.Y. 2009).

A determination of employment status under the FLSA "is a question of federal law." *See Antenor,* 88 F.3d at 929.

Here, Plaintiff Hedges describes his relationship with the Defendants, and bases his FLSA claim upon his purported work for Artistic Endeavors and Montage, which he alleges are operated and controlled in some manner by the other Defendants.  *See* Complaint at ¶¶ 3-6, 39-40.  Hedges describes how he and Defendant Tysdal founded Montage Finance, LP, the predecessor to Defendant Montage, to "provide loans to collectors, galleries, consultants, and other art industry participants secured by fine art, collectibles and antiques."  *See* Complaint at ¶ 13.  Because Hedges was an "art collector and has specialized knowledge of investing in Andy Warhol photographs and contemporary art," *see* Complaint at ¶ 1, he was to "be the active person in a venture primarily collecting and transacting in Andy Warhol photographs and other contemporary art."  *See id.* at ¶ 11.  He further describes how, in 2011, he and Tydsal started a second company (Defendant Artistic Endeavors) to "purchase and sell art and other alternative assets of an artistic or similar nature," *id.* at ¶ 15.  He alleges how he was a 50% owner of Artistic Endeavors through his personal investment company Kactus, *id.*, and that he and Tysdal agreed that Hedges would perform the work to "acquire, market, and sell the artwork[.]"  *See* Complaint at ¶ 16.  Over and above his investment opportunity as a 50% beneficial owner, Hedges alleges that the parties further agreed for Hedges to be able to earn a commission on sales of the art, *id.*, as well as reimbursement of his expenses, *id.*

As a matter of law, it is clear that Hedges was no ordinary employee.  He is a 50% beneficial owner in Artistic Endeavors, and his work is unquestionably the same type of "sweat equity" that any co-owner would put into a new venture, to increase potential profits from the investment.  Looking at the reasonable inferences between the lines of Hedges' allegations, the

relationship of the parties is clear:  Tysdal was to provide the money and financing for the venture, and Hedges was to bring the connections and expertise to purchase the artwork and then re-sell it at a profit.  *Compare* Complaint at ¶¶ 14, 20 (Artistic Endeavors' purchase of art was financed by Montage, IOF, and other private clients of Mr. Tysdal who could invest in such an endeavor) *with* ¶¶ 1, 16 (Hedges was the person connected in the art world who could identify, purchase, and negotiate sale of artwork).  Hedges even goes so far as to allege that he was the "person best suited to market and sell the art work acquired through his endeavors." [3] *See* Complaint at ¶ 28.

Notably, this action did not even arise until Artistic Endeavors had to sue Mr. Hedges in his home state of New York, seeking to recover possession of Artistic Endeavors' artwork after Mr. Hedges retained $51,000 of sales proceeds for himself without authorization, *see* Complaint at ¶ 33; *accord* Complaint filed in the Supreme Court of New York, Exhibit 1, and at the same time allegedly told Artistic Endeavors that he wanted to "move on to other professional opportunities[.]" *See* Complaint at ¶ 28.

Because Plaintiff Hedges is not an "employee" for purposes of the FLSA, his claim seeking payment of minimum wages under the FLSA necessarily fails as a matter of law.

> **2. Even if he qualified as an "employee," Mr. Hedges was still an executive, and therefore was excluded from the minimum wage provisions of the FLSA.**

Even assuming for the sake of argument that Hedges could have been considered an employee, however, his claim still fails as a matter of law because he unquestionably was a person who was employed in an executive capacity.  As such, there was no duty under the law to pay him a minimum wage.

---

[3] Because this section constitutes a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this allegation must be taken as true for purposes of consideration of the motion, regardless of whether it has any actual factual basis or whether Defendants deny the allegation.  *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir. 1990).

Pursuant to Section 213 of the FLSA, the minimum wage requirements of section 206 and overtime requirements of section 207 "**shall not apply** with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity[.]"  29 U.S.C. § 213(1).  Here, it is indisputable that Mr. Hedges was an executive for purposes of the FLSA, and therefore exempt from any minimum wage requirement:

> The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act also includes any employee who owns at least a bona fide 20–percent equity interest in the enterprise in which the employee is employed, regardless of whether the business is a corporate or other type of organization, and who is actively engaged in its management.

29 C.F.R. § 541.101.

By having a 50% beneficial ownership interest in Artistic Endeavors, Hedges clearly qualified as an "executive" under the regulation.  Indeed, Mr. Hedges himself describes his purported pay agreement as an "executive compensation package," *see* Complaint at ¶ 34.  Notably, Hedges makes <u>no</u> allegation of the time he purportedly worked that was not compensated.[4]  His demand for payment of minimum wages therefore fails as a matter of law.

**B.      Hedges's breach of contract claim is based upon a document that is unsigned, which affirmatively states it is non-binding.**

Hedges's state law claim for breach of contract is based upon the document attached to the Complaint as Exhibit A, a "Letter of Intent" dated March 20, 2013.  *See* Complaint at Ex. A.  Importantly, this document attached to the Complaint <u>is not signed by the parties</u>, and there is no allegation of any meeting of the minds.  Moreover, the document itself directly states that "**This Letter of Intent, unless specifically stated otherwise herein, shall not be binding on any person or entity.**"  *Id.*

---

[4] Rather, his allegation is that he "was not paid" because Artistic Endeavors filed suit in New York contesting whether he could validly keep $51,000 of art sale proceeds Mr. Hedges kept for himself.  *See* Complaint at ¶ 42.  Thus, to the extent he claims he was never paid in the first place, that allegation is false – he paid himself without authorization, and Artistic Endeavors has filed suit in New York to recover that money.  No valid FLSA claim lies.

Notwithstanding these fatal deficiencies, Hedges points to this document as somehow constituting an enforceable contract.  Florida law is to the contrary.

To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove "offer, acceptance, consideration and sufficient specification of essential terms."  *St. Joe Corp. v. McIver,* 875 So.2d 375, 381 (Fla. 2004) (describing the "basic requirements of contract law").  The proponent of the contract must prove these elements by a preponderance of the evidence. *Id.* (oral contract); *see also Robbie v. City of Miami, Fla.,* 469 So.2d 1384, 1385 (Fla. 1985) (written contract).

A party cannot modify a contract unilaterally.  *St. Joe Corp.*, 875 So. 2d at 382.  All the parties whose rights or responsibilities the modification affects must consent.  *See Binninger v. Hutchinson,* 355 So.2d 863 (Fla. 1st DCA 1978); *United Contractors, Inc. v. United Constr. Corp.,* 187 So.2d 695 (Fla. 2d DCA 1966).  Moreover, the modification must be supported by proper consideration.  *See, e.g., Wilson v. Odom,* 215 So.2d 37 (Fla. 1st DCA 1968).

Hedges does not allege any actual consummation of the deal proposed by this unsigned Letter of Intent.  By Hedges' own admission, the Letter of Intent does not even represent the material terms of any agreement, as Hedges directly alleges that the Letter of Intent only contains "*certain* of the substantial terms" of his alleged contract.  *See* Complaint at ¶ 50 (emphasis added).  Although he infers that there are other additional terms, he does not allege what they are.

Further, a clear reading of the document shows it is not a complete offer or contract: looking at the Letter of Intent, the core structure of that proposal was for Montage to buy substantially all the assets of Artistic Endeavors, *see* Exhibit A at p. 1 "Purchased Assets," – and

yet there is no purchase price listed.  This clearly is not a complete offer or contract, and therefore is unenforceable.

To the extent Hedges suggests that IOF, Artistic Endeavors, and Montage somehow performed the unsigned Letter of Intent by subsequently paying him $10,000 per month, *see* Complaint at ¶¶ 23, 50, and Exhibit B to the Complaint, the documents attached by Hedges to his own Complaint contradict performance of any contract  Rather, the emails attached by Hedges to the Complaint clearly and consistently describe certain $10,000 payments to Mr. Hedges as a "distribution."  This is a term of art, especially where Mr. Hedges is the 50% beneficial owner of Artistic Endeavors through Kactus, LLC.  Payment of a "distribution" is fundamentally different from a payment of money for "services rendered," as described in the Letter of Intent.  Hedges cannot point to these payments as substantiation or performance of the Letter of Intent.

Moreover, Mr. Hedges might want to re-think whether he considers the Letter of Intent to be an enforceable contract, in light of his allegation in paragraph 14 of the Complaint that he does not believe he needs to repay the loans made by Montage to Kactus.  If the Letter of Intent was indeed an enforceable contract, then (as stated on page 2 in the section entitled "AE Operations/Wind-Down") it is required that "all amounts to be distributed to Mr. Hedges from and after the Closing Date from the profits of AE <u>shall be contributed by Mr. Hedges to the capital of Kactus, LLC (an entity wholly-owned by Mr. Hedges) to subsidize the payment thereby of its obligation to Montage under those certain promissory notes</u>" made by Kactus for the benefit of Montage.  *See* Complaint at Ex. A, page 2.  The Letter of Intent reaffirms Kactus's obligations under those Notes, and any payments that were to go to Mr. Hedges under this Letter of Intent were supposed to be directed by Mr. Hedges right back to Montage anyway.

## **CONCLUSION**

Mr. Hedges, for himself individually and for his investment company Kactus, is clearly and unquestionably forum-shopping in having filed this action here in the Middle District of Florida – notwithstanding that no Defendant can be found in Florida, no Defendant conducts business or has minimum contacts to Florida, nothing between the parties was supposed to occur in Florida, and notwithstanding that, for at least one claim, there is an arbitration clause requiring resolution in Denver, Colorado.  The dispute concerning the artwork and the sales proceeds being held by Mr. Hedges is currently pending in New York, has been pending prior to the filing of this case, and is the proper place for resolution of this dispute.  This Court should not entertain or countenance Mr. Hedges' waste of judicial and party resources by coming 1,500 miles south to a completely unrelated venue, to file counterclaims as leverage in his dispute with Defendants. This case should be dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

Dated this 11th day of February, 2014.

> Gaebe, Mullen, Antonelli & DiMatteo
> **Attorneys for Defendants**
> 420 South Dixie Highway, 3rd Floor
> Coral Gables, Florida  33146
> Telephone:      (305) 667-0223
> Facsimile:      (305) 284-9844
>
> By:___/s/ Matthew C. Martin_____
> Matthew C. Martin, Esq. - FBN: 56304
> E-mail: mmartin@gaebemullen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been filed with the Clerk of the United States District Court, Middle District of Florida, in compliance with CM/ECF requirements, which generates service through cmecf_flmd_notification@flsd.uscourts.gov to **Richard A. Alayon, Esq.**, *Alayon & Associates, P.A.*, ralayon@alayonlaw.com, 135 San Lorenzo Ave., Ste. 820, Coral Gables, Florida 22146, on **February 11, 2014.**